

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-1997

# Balgowan v. State of NJ Dept of Transportation

Precedential or Non-Precedential:

Docket 95-5276

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Balgowan v. State of NJ Dept of Transportation" (1997). *1997 Decisions.* Paper 123.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/123

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 9, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 95-5276

RICHARD M. BALGOWAN; THOMAS M. BATZ; THOMAS
BETTEN; KARL L. BLUM; RAYMOND A. BURROUGHS;
DENNIS CARLSON; JOHN I. CORBO; MICHAEL D.
CRONIN; STEFFAN FRANKLIN; HERMAN J. KRIEG;
JOSEPH J. LAGULLO; CHESTER J. LYSZCZEK;
ALBERT M. MALATESTA; ARAM MARDEKIAN; IKE
MARDEKIAN; WILLIAM L. MUNCZINSKI; ALAN S. NASS;
THOMAS M. NORRIS; MALCOLM J. PALMER; JOHN C.
POWERS; FRANCIS F. REALINI; CARL G. REBBECK;
STANLEY F. RIPISH; EMIL H. ROESSLER; WAYNE A.
RUMSEY; RICHARD F. SPOERL; LAWRENCE A. SROKA;
JOHN W. STULTS; ROBERT L. SWAIN; DENNIS R.
SYMONS; JOHN B. TAYLOR, JR.; CHARLES A.
TERRITO, JR.; PETER W. TOMORY; ALFRED T.
WOODROW; DANIEL YACOVINO; CHARLES W. YOUNG;
RICHARD ZOLNOWSKI

Appellants

v.

STATE OF NEW JERSEY,
DEPARTMENT OF TRANSPORTATION

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 93-cv-02209)

Argued January 22, 1996
(Opinion Filed: May 16, 1996;
Petition for Panel Rehearing Granted;
Opinion Vacated July 9, 1996)
Submitted: July 9, 1996

BEFORE: STAPLETON, COWEN and GARTH
Circuit Judges

(Filed June 9, 1997)

Steven P. Weissman
Weissman & Mintz
One Executive Drive
Suite 200
Somerset, New Jersey 08873
 COUNSEL FOR APPELLANTS

Steven Sutkin
Office of New Jersey Attorney
 General
Division of Law/Transportation
Richard J. Hughes Justice Complex
Trenton, New Jersey 08608

 COUNSEL FOR APPELLEE

**OPINION OF THE COURT**

COWEN, Circuit Judge.

Plaintiff-appellants, thirty-six project engineers and one supervising engineer (DOT engineers), filed this lawsuit against the State of New Jersey, Department of Transportation (State), in the United States District Court for the District of New Jersey. The lawsuit seeks overtime compensation under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 et seq. (1978). The DOT engineers alleged that the State violated the FLSA by failing to pay them "time and a half" for time worked in excess of 40 hours per week. The State responded that the DOT engineers are exempt professionals under the "salary-basis" test,1 promulgated by the United States Department of

_____

1. An exempt professional under the salary-basis test is an employee who is, in effect, an executive who is salaried and does not perform work on an hourly basis. A non-exempt individual performs work on an hourly basis and therefore qualifies for overtime compensation.

2

Labor (DOL) and codified at 29 C.F.R. § 541.118, as amended by 29 C.F.R. § 541.5d (1996). The DOT engineers replied that because their wages are subject to reduction under the DOT's disciplinary policy, they are hourly workers and are not exempt under the DOL regulations.

The district court granted the State's motion for summary judgment and dismissed the DOT engineers' complaint. It held that the "salary-basis" test is not applicable to public employees such as the DOT engineers and, even if it were applicable, the engineers are exempt because the DOT has never actually deducted pay under its disciplinary policy.

The DOT engineers appealed, and on May 16, 1996, we affirmed in part, reversed in part, and remanded the case with instructions to enter summary judgment in favor of the DOT engineers awarding back-pay for overtime for the period commencing September 6, 1991. We held that the "salary-basis" test, as amended in September 1991, applies to the DOT engineers. However, we further held that the DOT engineers fail to satisfy the "salary-basis" test because the DOT's disciplinary policy subjects them to reductions in pay for non-safety related infractions.

On March 27, 1996, the United States Supreme Court issued an opinion that abruptly changed the law regarding Eleventh Amendment immunity. See Seminole Tribe of Florida v. Florida, 116 S.Ct. 1114 (1996). Prior to Seminole, the Supreme Court had held that Congress could abrogate Eleventh Amendment immunity, subjecting states to private causes of action. See Pennsylvania v. Union Gas Co., 491 U.S. 1, 109 S.Ct. 2273 (1989). Seminole overruled Union Gas and held that the Commerce Clause did not invest Congress with the authority to waive states' Eleventh Amendment immunity and to create private causes of action against states that had not consented to such suits. 116 S.Ct. at 1127-28, 1131-32.

The State filed a petition for rehearing, relying in part on the Supreme Court's Seminole decision. By order dated July 9, 1996, we granted the State's petition for panel rehearing and vacated our May 16, 1996 opinion. See Balgowan v. State of New Jersey, Dept. of Transp., 84 F.3d 667 (3d Cir. 1996). We ordered rebriefing by the parties, addressing,

3

among other issues, the State's claim that the Supreme Court's decision in <u>Seminole</u> divested us of jurisdiction. On September 23, 1996, the DOT engineers filed their opening brief, and on November 22, 1996, the State filed its responsive brief. The DOT engineers filed their reply brief on December 31, 1996. On that same day the DOT engineers filed a motion to amend their complaint in order to add the DOT Commissioner as a defendant, and to include a claim for prospective declaratory and injunctive relief. The State objected to any such amendment.

## I.

We first address the DOT engineers' motion to amend. Federal Rule of Civil Procedure 21 provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." FED . R. CIV. P. 21. "Although the Federal Rules of Civil Procedure strictly apply only in the district courts, [FED. R. CIV. P. 1], the policies informing Rule 21 may apply equally to the courts of appeals." <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S. 826, 832, 109 S.Ct. 2218, 2223 (1989). Rule 21 and an appellate power that "long predates the enactment of the Federal Rules" have been relied upon by appellate courts to both dismiss and add parties in order to maintain jurisdiction and standing. <u>Id</u>. at 834, 109 S.Ct. at 2223 (allowing dismissal of non-diverse party on appeal); <u>see also</u> <u>Mullaney v. Anderson</u>, 342 U.S. 415, 416-17, 72 S.Ct. 428, 429-30 (1952) (avoiding union's standing issue by granting motion to add two of its members as parties on appeal); <u>Bhatla v. U.S. Capital Corp.</u>, 990 F.2d 780, 786 (3d Cir. 1993) (exercising court's discretion to dismiss action versus non-diverse dispensable party so that case could proceed). Resort to Rule 21 is appropriate where "requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention." <u>Newman-Green</u>, 490 U.S. at 836, 109 S.Ct. at 2225 (citing <u>Mullaney</u>, 342 U.S. at 417, 72 S.Ct. at 430).

The State argues that we should deny the DOT engineers' motion to amend the complaint because the engineers

4

"waited seven months before presenting their motion." Appellee Br. in Opp'n. to Mot. to Amend Compl. at 11. It also claims that there is a lack of "express statutory authority to amend in the appellate court [and a] constitutional and statutory bar on the DOT engineer[s'] proposed claims for prospective declaratory and injunctive relief." Id. at 13. In light of the Federal Rules of Civil Procedure, the relevant case law, the unexpected turn in the law as a result of Seminole, and the availability of declaratory relief, we do not find the State's arguments persuasive.

First, as we have previously stated, FED. R. CIV. P. 21 provides that plaintiffs may be permitted to add parties at any stage of the action, including in the court of appeals. FED. R. CIV. P. 21. See also Newman-Green, 490 U.S. at 832-33, 109 S.Ct. at 2222; Bhatla, 990 F.2d at 786. Second, given the change in the law effected by Seminole, we would be hard-pressed to fault the engineers for not having moved to amend the complaint sooner. Third, the State has not identified any prejudice to it resulting from the delay. See Newman-Green, 490 U.S. at 838, 109 S.Ct. at 2225-26. Finally, as will be discussed below, the DOT engineers are not precluded from seeking prospective declaratory relief. See Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908). See also Laskaris v. Thornburgh, 661 F.2d 23, 26 (3d Cir. 1981); Berman Enters., Inc. v. Jorling, 3 F.3d 602, 606-07 (2d Cir. 1993). Therefore, we grant the DOT engineers' motion to amend the complaint.

## II.

Now that we have permitted the DOT engineers' to amend their complaint, we must determine whether we have jurisdiction to address their claims. Under the teachings of Seminole, we do not have jurisdiction over the DOT engineers' claim against the State for monetary relief. Seminole, 116 S.Ct. at 1127-28. However, by allowing the DOT engineers to amend their complaint naming the DOT Commissioner as an additional party and adding a claim for prospective declaratory relief, we may retain jurisdiction under the doctrine of Ex Parte Young, 209 U.S. 123, 128 S.Ct. 441 (1908). In Ex Parte Young, the Supreme Court

5

carved out an exception to Eleventh Amendment immunity by permitting citizens to sue state officials when the litigation seeks only prospective injunctive relief in order to end continuing violations of federal law. Id. The Ex Parte Young exception has been interpreted by courts to allow suits against state officials for both prospective injunctive and declaratory relief. See, e.g., Laskaris, 661 F.2d at 26; Berman, 3 F.3d at 606-07; Roller v. Cavanaugh, 984 F.2d 120, 122 (4th Cir. 1993). Although Ex Parte Young's exact wording allows suits for prospective injunctive relief, the 1908 opinion was issued well before declaratory relief was available. See Steffel v. Thompson, 415 U.S. 452, 466, 94 S.Ct. 1209, 1219 (1974) (In 1934 Congress enacted the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, in order "to provide a milder alternative to the injunction remedy.") (quoting Perez v. Ledesma, 401 U.S. 82, 111, 91 S.Ct. 674, 690 (1971) (Brennan, J. concurring in part and dissenting in part)).

Only the Secretary of Labor may initiate an action for injunctive relief under the FLSA. See 29 U.S.C. § 211(a) ("Except as provided in section 212 of this title[child labor provisions], the Administrator [Secretary of Labor]2 shall bring all actions under section 217 of this title to restrain violations of this chapter."); see also Lorillard v. Pons, 434 U.S. 575, 581, 98 S.Ct. 866, 870 (1978); Bowe v. Judson C. Burns, Inc., 137 F.2d 37, 39 (3d Cir. 1943); Barrentine v. Arkansas-Best Freight Sys., Inc., 750 F.2d 47, 51 (8th Cir. 1984). Since the Secretary of Labor is the only party permitted to seek injunctive relief under the FLSA, and the Secretary is not a party to this action, injunctive relief is not available to the plaintiffs. However, private actions brought by employees for declaratory relief are permissible. See, e.g., Johns v. Stewart, 57 F.3d 1544, 1556 (10th Cir. 1995); Biggs v. Wilson, 828 F. Supp. 774, 779 (E.D. Ca. 1991), aff 'd, 1 F.3d 1537 (9th Cir. 1993). Therefore, we find that we have jurisdiction to reach the merits of the

_____

2. The functions of the Administrator of the Wage and Hour Division of the Department of Labor, under the Act, were transferred to the Secretary of Labor pursuant to the Reorganization Plan No. 6 of 1950, § 1, eff. May 24, 1950, 15 Fed.Reg. 3174, 64 Stat. 1263, as amended Pub.L. 99-619, § 2(c)(1), Nov. 6, 1986, 100 Stat. 3491.

case and consider whether we can grant declaratory relief to the plaintiffs.

## III.

Having determined that the DOT engineers can amend their complaint and that we can properly consider declaratory relief, we now turn to the merits of the case. On this rehearing, we reconsider the legal issue of whether the DOT engineers are exempt from the overtime provisions of the FLSA. We reexamine this issue in view of a recently decided Supreme Court case, Auer v. Robbins, 117 S.Ct. 905 (1997). Auer, like the instant case, involves the application of the FLSA professional exemption and the Department of Labor's "salary-basis" test. The factual situation in Auer is almost identical to the facts in the case at bar. In Auer, police sergeants and lieutenants employed by the City of St. Louis contended that they are "hourly" employees under the DOL's "salary-basis" test because their compensation is subject to deductions for disciplinary violations. They argued that they are "subject to" such deductions because "the Police Manual nominally subjects all department employees to a range of disciplinary sanctions that includes disciplinary deductions in pay, and because a single sergeant was actually subjected to a disciplinary deduction." Id. at 910.

The primary issue considered by the Supreme Court in Auer was "whether. . . an employee's pay is `subject to' disciplinary or other deductions whenever there exists a theoretical possibility of such deductions, or rather only when there is something more to suggest that the employee is actually vulnerable to having his pay reduced." Id. Before reaching this issue, however, the Court addressed the police officers' claim that "the `no disciplinary deductions' element of the salary-basis test is invalid for public-sector employees." Id. at 909. It noted that "[t]he Secretary's view that public employers are not so differently situated with regard to disciplining their employees as to require wholesale revision of his time-tested rule simply cannot be said to be unreasonable." Id. The Court further held that the officers' "complaints about the [Secretary of Labor's]

7

failure to amend the disciplinary-deduction rule cannot be raised in the first instance in the present suit." Id. at 910.

Following the Supreme Court's decision in Auer, we must sustain the Secretary of Labor's view and find that the "no disciplinary deductions" element of the "salary-basis" test is not invalid for public-sector employees. Also following Auer, we will not permit the engineers to raise here for the first time a claim that the Secretary of Labor has failed to amend the disciplinary-deduction rule in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A) (1996).

We now turn to the main issue in the case. In Auer, the Supreme Court deferred to the Secretary of Labor's interpretation of the disciplinary component of the "salary-basis" test. The Court held that the police officers were exempt from the overtime provisions. The Secretary of Labor's interpretation, adopted by the Supreme Court, states that exempt status will be denied only "when employees are covered by a policy that permits disciplinary or other deduction in pay `as a practical matter.' " Id. at 911. The interpretation by the Secretary of Labor further provides that the "standard is met . . . if there is either an actual practice of making such deduction or an employment policy that creates a `significant likelihood' of such deductions." Id. Finally, there must be "a clear and particularized policy -- one which `effectively communicates' that deductions will be made in specified circumstances." Id.

In Auer, the Court found that because the Police Manual nominally covered all department employees, it did not:

"effectively communicate" that pay deductions are an anticipated form of punishment for employees in[the police sergeants and lieutenants'] category . . . .. If the statement of available penalties applied solely to[the sergeants and lieutenants], matters would be different; but since it applies both to [them] and to employees who are unquestionably not paid on a salary basis, the expressed availability of disciplinary deductions may have reference only to the latter.

8

Id. (emphasis omitted). The fact that one sergeant was actually subjected to a disciplinary deduction did not alter the Court's analysis.

Based on Auer, we conclude that the engineers in this matter qualify for the professional exemption under the FLSA. They are not realistically "subject to" reductions in their pay. At the DOT, there is neither an actual practice of making deductions, nor is there an "employment policy that creates a `significant likelihood' of such deductions" as required by the Supreme Court in Auer. Id.

The disciplinary policy in this case, like that in Auer, applies to all DOT employees, not just the DOT engineers. Pursuant to Auer, such a broad-based policy fails to " `effectively communicate' that pay deductions are an anticipated form of punishment" for the DOT engineers. Id. Furthermore, the DOT's nonenforcement of its disciplinary policy and the fact that no engineer has ever suffered a reduction in pay under the policy, provide even stronger evidence that the DOT's disciplinary policy is not one under which there is a "significant likelihood" of deductions.

As a final note, the Supreme Court in Auer stated that the salary test's "window of corrections," 29 C.F.R. § 541.118(a)(6), is available to preserve the exempt status of employees who have been subjected to pay deductions inconsistent with the salary-basis test. The Court emphasized that the employer could reimburse employees not only if the deductions were "inadverten[t]", but also if they were "made for reasons other than lack of work." Auer, 117 S.Ct. at 912 (quoting 29 C.F.R. § 541.118(a)(6) (alteration added)). Accordingly, if any DOT engineer's pay had been docked, the "window of corrections" exemption could have been used by the State to preserve that engineer's exempt status.

**IV.**

We hold that the DOT engineers can amend their complaint to name the DOT Commissioner as an additional party and add a claim for prospective declaratory relief. We further hold that we have jurisdiction to reach the merits of the case and consider declaratory relief. Even though we

9

allowed an amendment to the complaint and would normally order service to be made upon the DOT Commissioner, because the engineers cannot succeed on the merits under Auer, it would be futile to require service and processing of the amended complaint. In assessing the legal issues against the backdrop of Auer, we conclude that the "salary-basis" test set forth in 29 C.F.R. § 541.118(a), as amended by 29 C.F.R. § 541.5d, is valid as applied to public employees such as the DOT engineers. Further, the DOT engineers satisfy the salary test because the DOT's disciplinary policy does not "permit[ ] disciplinary or other deductions in pay `as a practical matter.' "

Hence, although the legal landscape has changed since the district court held for the state in its order of March 27, 1995, and our analysis has accordingly been framed to reflect the dictates of Seminole and Auer, the conclusion we have reached is the same conclusion reached by the district court. We will therefore affirm the order granting summary judgment for the State.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

10